**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BAY PARK CENTER FOR NURSING AND
REHABILITATION, LLC, d/b/a PINNACLE
MULTICARE NURSING AND
REHABILITATION CENTER,

                    Plaintiff,

        -against-

ROBERT F. KENNEDY, JR., et al.,

                    Defendants.

No. 26 Civ. 1620 (JGK)

---

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND
<u>TEMPORARY RESTRAINING ORDER</u>**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2728
E-mail: kathleen.lewis@usdoj.gov

KATHLEEN M. LEWIS
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................2

    A.  The Medicare Program  .................................................................................................2

        1.  Medicare Audits for Overpayments.......................................................................3

        2.  The Administrative Appeals Process......................................................................3

    B.  Pinnacle's OIG Audit and Medicare Demand Letter .............................................6

STANDARD OF REVIEW ...................................................................................................8

ARGUMENT ........................................................................................................................9

I.     Pinnacle Fails to Demonstrate a Likelihood of Success on the Merits ..............................9

    A.      Because Pinnacle Has Failed to Exhaust Its Administrative Appeals, the Court Lacks Jurisdiction Over Its Claims ...........................................................9

    B.      Because Pinnacle Has Not Yet Exhausted Its Administrative Remedies, Its Due Process Claims Are Not Yet Ripe..................................................................10

II.    Pinnacle Cannot Show Irreparable Harm .......................................................................12

CONCLUSION....................................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbey v. Sullivan*,
  978 F.2d 37 (2d Cir. 1992)..................................................................................................... 13

*Accident, Injury, & Rehab., PC v. Azar*,
  943 F.3d 195 (4th Cir. 2019) ................................................................................................. 12

*Am. Sav. Bank, FSB v. UBS Fin. Servs.*,
  347 F.3d 436 (2d Cir. 2003)................................................................................................... 10

*Barrows v. Becerra*,
  24 F.4th 116 (2d Cir. 2022) ..................................................................................................... 3

*Hayvin Gaming, LLC v. Workinman Interactive, LLC*,
  No. 23 Civ. 6172, 2023 WL 3748844 (W.D.N.Y. June 1, 2023) ........................................... 13

*Heckler v. Cnty. Health Servs. of Crawford Cnty., Inc.*,
  467 U.S. 51 (1984).................................................................................................................... 2

*Hoblock v. Albany Cty. Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005)....................................................................................................... 9

*Integrity Soc. Work Servs., LCSW, LLC v. Azar*,
  No. 20 Civ. 2770 (PK), 2021 WL 4502620 (E.D.N.Y. Oct. 1, 2021) .............................. passim

*JTH Tax, LLC v. Agnant*,
  62 F.4th 658 (2d Cir. 2023) .................................................................................................... 12

*Kittay v. Giuliani*,
  112 F. Supp. 2d 342 (S.D.N.Y. 2000)..................................................................................... 10

*Lanvin, Inc. v. Colonia, Inc.*,
  739 F. Supp. 182 (S.D.N.Y. 1990).......................................................................................... 13

*MedEnvios Healthcare, Inc. v. Becerra*,
  No. 23 Civ. 20068, 2023 WL 9692087 (S.D. Fla. Nov. 27, 2023).......................................... 2

*N.Y. Statewide Senior Action Council v. Leavitt*,
  409 F. Supp. 2d 325 (S.D.N.Y. 2005)..................................................................................... 10

*Physician Hosps. of Am. v. Sebelius*,
  691 F.3d 649 (5th Cir. 2012) .................................................................................................. 10

*Sahara Health Care, Inc. v. Azar,*
    975 F.3d 523 (5th Cir. 2020) ................................................................ 11

*Salinger v. Colting,*
    607 F.3d 68 (2d Cir. 2010) ................................................................... 12

*Shalala v. Ill. Council on Long Term Care,*
    529 U.S. 1 (2000) .................................................................................. 10

*Townsend v. Cochran,*
    528 F. Supp. 3d 209 (S.D.N.Y. 2021) ..................................................... 3

*Unicorn Mgmt. Corp. v. Koppers Co.,*
    366 F.2d 199 (2d Cir. 1966) .................................................................... 8

*United States v. Moss,*
    34 F.4th 1176 (11th Cir. 2022) ............................................................... 2

*Univ. of Texas v. Camensich,*
    451 U.S. 390 (1981) ................................................................................ 8

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) .................................................................................... 8

**Statutes**

28 U.S.C. § 1331 ......................................................................................... 10

42 U.S.C. § 405(g) ......................................................................................... 5

42 U.S.C. § 405(h) ....................................................................................... 10

42 U.S.C. § 1395 ........................................................................................ 2, 3

42 U.S.C. § 1395ddd ..................................................................................... 3

42 U.S.C. § 1395ff(a) .................................................................................. 2, 4

42 U.S.C. § 1395ff(b)(1) ........................................................................... 4, 5, 9

42 U.S.C. § 1395ff(c) .................................................................................... 4

iii

**Regulations**

42 C.F.R. § 405.371(a)(3) ................................................................................................. 3

42 C.F.R. § 405.375 ........................................................................................................... 7

42 C.F.R. § 405.379(d)(5) ................................................................................................. 5

42 C.F.R. § 405.389(d)(2) ................................................................................................. 4

42 C.F.R. § 405.389(3) ...................................................................................................... 5

42 C.F.R. § 401.607(c)(2) ................................................................................................. 7

42 C.F.R. § 405.904(a)(2) ................................................................................................. 7

42 C.F.R. § 405.940 ........................................................................................................... 4

42 C.F.R. § 405.948 ........................................................................................................... 4

42 C.F.R. § 405.960 ........................................................................................................... 4

42 C.F.R. § 405.968 ........................................................................................................... 4

42 C.F.R. § 405.970 ........................................................................................................... 4

42 C.F.R. § 405.1130 ......................................................................................................... 5

42 C.F.R. § 405.1132(b) .................................................................................................... 5

42 C.F.R. § 405.1000 ......................................................................................................... 5

Defendants Robert F. Kennedy, Jr., Mehmet Oz, Thomas March Bell, and National Government Services, Inc. ("NGS") (collectively, the "Government"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to Plaintiff Bay Park Center for Nursing and Rehabilitation, LLC, d/b/a Pinnacle MultiCare Nursing and Rehabilitation Center's ("Pinnacle" or "Plaintiff") request for a preliminary injunction and a temporary restraining order (ECF No. 7).

## PRELIMINARY STATEMENT

In the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "MMA"), Congress laid out a detailed process for providers to dispute recoupment of Medicare overpayments—four levels of administrative review, followed by judicial review in federal court. When a provider opts to pursue an administrative appeal of an initial determination of overpayment, the recoupment process is paused at the first two steps, which involve redetermination by a Centers for Medicare and Medicaid Services contractor, and then, in the event the provider is dissatisfied with the redetermination decision, reconsideration from a separate, qualified independent contractor. It is only at the third step in the process that recoupment begins.

The Court should deny Pinnacle's request for a preliminary injunction with a temporary restraining order, because Pinnacle cannot show that it is likely to succeed on the merits, or that it will suffer irreparable harm. Put simply, Pinnacle failed to exhaust its administrative appeals— indeed, it had not even begun the appeal process—before filing this lawsuit. The Court does not have jurisdiction to determine whether Pinnacle has been provided with adequate process at this stage, because Congress has explicitly delegated that power to others. Moreover, Pinnacle's assertion that it will be irreparably harmed if recoupment is allowed to immediately take place rings hollow when the administrative appeal process pauses recoupment during the first two

1

steps.  While Pinnacle has asserted that recoupment will entail high stakes for Pinnacle and its patients, the prospect of future recoupment and financial hardship does not rise to the level of immediate and irreparable harm.  Accordingly, Pinnacle's request for a preliminary injunction with a temporary restraining order should be denied.

## BACKGROUND

### A.    The Medicare Program

Medicare is a federal program created by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, that provides subsidized health insurance for the aged and disabled.  *Heckler v. Cnty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 53 (1984).  Under the program, certain providers and suppliers of medical services can be reimbursed by HHS for furnishing those services to Medicare beneficiaries.  *See* 42 U.S.C. § 1395ff(a).

Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), an HHS agency.  To receive health care reimbursement, a supplier submits a claim to a Medicare Administrative Contractor ("MAC"), a private contractor retained by HHS to make an initial determination as to whether and in what amount a claim should be paid.  42 U.S.C. §§ 1395ff(a), 1395kk-1(a).  "Because the Medicare program receives more than a billion claims for payment each year, the overwhelming majority of these claims get paid upfront, on an 'honor system,'" with only about 2% being substantively scrutinized.  *MedEnvios Healthcare, Inc. v. Becerra*, No. 23 Civ. 20068, 2023 WL 9692087, at *2 (S.D. Fla. Nov. 27, 2023), *adopted*, 2024 WL 551837 (S.D. Fla. Feb. 12, 2024); *see also United States v. Moss*, 34 F.4th 1176, 1181 (11th Cir. 2022) ("Medicare and Medicaid . . . work on the honor system. . . . Both programs take a pay first, ask questions later (if ever) approach.").

Medicare Part A, the plan at issue in this case, "provides basic protection against the costs of hospital, related post-hospital, home health services, and hospice care."  42 U.S.C. § 1395c; *see*

2

*also Barrows v. Becerra*, 24 F.4th 116, 123 (2d Cir. 2022).  In particular, "Part A covers 'inpatient hospital services,' which includes both services 'furnished to an inpatient of a hospital' and 'post-hospital extended care,' such as skilled-nursing facility ('SNF') care 'after [a patient's] transfer from a hospital in which [she] was an inpatient for not less than 3 consecutive days.'"  *Barrows*, 24 F.4th at 123 (quoting 42 U.S.C. §§ 1395d(a), 1395x(b), 1395x(h), 1395x(i)).

### 1. Medicare Audits for Overpayments

Given the potential for fraudulent billing or abuse, Congress created the Medicare Integrity Program, *see* 42 U.S.C. § 1395ddd, which empowered the Secretary to form contracts with private entities to carry out enumerated functions, including "[d]eterminations as to whether payment should not be, or should not have been, made . . . , and recovery of payments that should not have been made." 42 U.S.C. § 1395ddd(b)(3); 42 C.F.R. § 405.371(a)(3) (describing how overpayments may be offset or recouped), § 421.304.  Payments that "should not be, or should not have been, made," *see* 42 U.S.C. § 1395ddd(b), are colloquially referred to as "overpayments."  The determination and recovery of overpayments can occur through post-payment audits by CMS contractors who review random samples of a provider's Medicare claims.  42 U.S.C. § 1395ddd(f)(8).

### 2. The Administrative Appeals Process

In the event that a provider disagrees with the initial overpayment determination, there is a four-step administrative process that it is required to pursue.  *See generally Townsend v. Cochran*, 528 F. Supp. 3d 209, 213 (S.D.N.Y. 2021) (outlining claims and administrative appeals process for a challenge to the denial of a claim under the Medicare statute); *Integrity Soc. Work Servs., LCSW, LLC v. Azar*, No. 20 Civ. 2770 (PK), 2021 WL 4502620, at *3-4 (E.D.N.Y. Oct. 1, 2021), *aff'd sub nom. Integrity Soc. Work Servs., LCSW, LLC v. Becerra*, No. 21-2757, 2022 WL 1930866 (2d Cir. June 6, 2022) (same).

At the first level of the appeal process, "[p]roviders that are 'dissatisfied with an initial determination may request a redetermination by a contractor in accordance with' regulations." *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *3 (quoting 42 C.F.R. § 405.940); *see also* 42 U.S.C. § 1395ff(a)(3)). "Redetermination requires an 'independent review of an initial determination' by '[a]n individual [at a MAC] who was not involved in making the initial determination.'" *Id.* (quoting 42 C.F.R. § 405.948). "Recoupment pauses 'upon receipt of a timely and valid request for a redetermination of an overpayment.'" *Id.* (quoting 42 C.F.R. § 405.379(d)(1)). "Recoupment may resume if an overpayment decision is affirmed on redetermination, but pauses again if the provider requests a reconsideration." *Id.* (citing 42 C.F.R. §§ 405.389(d)(2), (3)).

At the second level, if a provider is dissatisfied with the redetermination, it may seek reconsideration by a Qualified Independent Contractor ("QIC"), a CMS contractor that is different from the contractor that provided the initial determination. *See* 42 C.F.R. § 405.960; *see also* 42 U.S.C. § 1395ff(b)(1). Reconsideration is "an independent, on-the-record review of an initial determination, including the redetermination and all issues related to payment of the claim." 42 C.F.R. § 405.968. The QIC may receive and consider any additional evidence the parties submit, or that the QIC obtains on its own. 42 U.S.C. §§ 1395ff(c); 42 C.F.R. § 405.968(a)(1). Reconsideration must be completed within 60 calendar days unless an exception applies, 42 C.F.R. § 405.970, and recoupment is again paused until a reconsideration decision is rendered. 42 U.S.C. § 1395ddd(f)(2)(A); *see also* 42 C.F.R. § 405.389(3). "Once a reconsideration decision is rendered, however, recoupment resumes regardless of further appeals." *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *3 (citing 42 C.F.R. § 405.379(d)(5)).

At the third level, "[i]f a provider is 'dissatisfied with a QIC's reconsideration, or if the adjudication period . . . for the QIC to complete its reconsideration has elapsed,' the provider may then request a hearing before an Administrative Law Judge ('ALJ') at the Office of Medicare Hearings and Appeals." *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *4 (quoting 42 C.F.R. §§ 405.1000, 405.1006).  The ALJ must make a *de novo* determination based on the entire record, including the original record before the QIC, any new evidence submitted by the parties, and the hearing record.  42 C.F.R. § 405.1000.

At the fourth level, "[i]f an ALJ holds a hearing and issues a decision, and the provider is dissatisfied with *that* decision, the provider may request review by the Medicare Appeals Council," which reviews the ALJ's decision *de novo*; however, the provider is not entitled to a hearing before the Council.  *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *4 (citing 42 C.F.R. §§ 405.1100, 405.1108(a)).  If the Council renders a decision, the Council's decision is the final decision of the Secretary and is subject to judicial review in federal district court.  *See* 42 C.F.R. § 405.1130; 42 U.S.C. § 1395ff(b)(1)(A); 42 U.S.C. § 405(g).[1]  "If a provider successfully appeals and the overpayment decision is reversed, 'the Secretary shall provide for repayment of the amount recouped plus interest.'"  *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *4 (quoting 42 U.S.C. § 1395ddd(f)(2)(B)).

---

[1] The MMA and regulations thereunder also provide for bypass of the ALJ hearing at Step 3, and the Medicare Appeals Council at Step 4, in the event that either of those steps are delayed beyond certain deadlines set by the Act and regulations thereunder.  *See Integrity Soc. Work Servs.*, 2021 WL 4502620, at *4 (discussing circumstances in which providers can bypass Steps 3 and 4).  In the event the provider is dissatisfied with the outcome even after escalating its claims, it may bring an action in federal district court within 60 days.  *See* 42 C.F.R. § 405.1132(b).

5

**B.     Pinnacle's OIG Audit and Medicare Demand Letter**

On or around July 1, 2022, the HHS Office of the Inspector General ("OIG") began an audit of Medicare reimbursements paid to Pinnacle between 2020 and 2021.   ECF No. 1 ("Compl.") ¶ 144.  On July 16, 2025, OIG issued a draft audit report, A-02-22-01017.  *Id.* ¶ 160. Pinnacle responded to the draft report, stating that it did not concur with any of OIG's findings, and responding to what it deemed to be shortcomings in the draft report.  *Id.* ¶ 161.

On November 14, 2025, OIG released its final audit report, entitled, "Nearly All Skilled Nursing Services Provided by Pinnacle Multicare Nursing and Rehabilitation Center Did Not Meet Medicare Payment Requirements."  *See* Declaration of Matthew Varghese dated Feb. 26, 2026 ("Varghese Decl.") (ECF No. 9) Ex. O (the "OIG Report").  OIG explained that "Pinnacle did not comply with Medicare requirements for 99 of 100 sampled claims, resulting in overpayments totaling $1.1 million, for skilled nursing services provided during calendar years 2020 and 2021. As a result, we estimated that Pinnacle received Medicare overpayments of at least $31.2 million." *Id.* at 2 ("Report Highlights").  OIG recommended, among other things, that Pinnacle "refund to the Medicare program $31.2 million for skilled nursing services claims that did not meet Medicare requirements."  *Id.*  The report stated that "OIG audit recommendations do not represent final determinations," and that "CMS, acting through a Medicare contractor, will determine whether overpayments exist and will recoup any overpayments consistent with its policies and procedures." *Id.* at 8 n.28.  Moreover, the OIG Report explained that

> Providers have the right to appeal those determinations and should familiarize themselves with the rules pertaining to when overpayments must be returned or are subject to offset while an appeal is pending.  The Medicare Part A and Part B appeals process has five levels (42 CFR § 405.904(a)(2)), *and if a provider exercises its right to an appeal, the provider does not need to return overpayments until after the second level of appeal*.

*Id.* (emphasis added).

On January 29, 2026, CMS, through its MAC National Government Services, Inc. ("NGS"), sent Pinnacle a letter explaining that Pinnacle had been overpaid in the amount of $31,227,884.  *See* Varghese Decl. Ex. P ("Demand Letter").  NGS explained that "[i]f you are unable to refund the entire amount at this time, advise this office immediately, with a request for an **Extended Repayment Schedule (ERS)** so that we may determine if you are eligible for one." *Id.* at 3 (emphasis in original).  In the next section, entitled "If You Wish to Appeal This Decision," NGS advised that if Pinnacle wished to avoid recoupment, it would need to file a request for redetermination within 30 days, and provided an address to send the request.  *Id.* at 3.  In addition, in a section entitled "How to Stop Recoupment," NGS instructs Pinnacle on how to "act quickly and decidedly" to prevent Medicare from recouping payments by taking advantage of Step 1 (redetermination) and Step 2 (reconsideration) of the administrative appeal scheme.  *Id.* at 4.  The Demand Letter further explains that "[e]ven when recoupment is stopped, interest continues to accrue." *Id.*

On February 11, 2026, Pinnacle timely submitted a statement of rebuttal pursuant to 42 C.F.R. § 405.375, asserting that the demand was legally insufficient, and invoking a number of defenses, public interest considerations, and financial hardship considerations.  Varghese Decl. Ex. Q.  The rebuttal asserted that the amount of the overpayment demand "require[d] a finding of hardship under 42 C.F.R. § 401.607(c)(2), which recognizes hardship when overpayments equal or exceed 10 percent of annual Medicare payments."  *Id.* at 5.  Pinnacle urged NGS to "defer recoupment, suspend withholding and interest accrual, and to confirm in writing that no withholding will occur pending final administrative resolution." *Id.* at 7.

On February 25, 2026, NGS responded to Pinnacle's statement of rebuttal, explaining that "[t]he rebuttal request does not cease recoupment activities in this circumstance.  If you wish to

stop recoupments on the debts, please continue with your Appeal or request an ERS as indicated on your demand letter." Varghese Decl. Ex. R. Pinnacle filed this lawsuit the next day.

**STANDARD OF REVIEW**

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008), but only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The fundamental purpose of preliminary injunctive relief is "to preserve the relative positions of the parties until a trial on the merits can be had." *Univ. of Texas v. Camensich*, 451 U.S. 390, 395 (1981); *see also Unicorn Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966) ("It is hornbook law that 'the general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action.'" (quoting 7 Moore, Federal Practice P65.04(1) (2d ed. 1955)).

A plaintiff seeking a preliminary injunction must establish that (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of the equities tips in his favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20.

With respect to the first element, the Second Circuit has differentiated between mandatory and prohibitory injunctions: "Where the movant seeks a mandatory injunction (one that will alter the status quo) rather than a prohibitory injunction (one that maintains the status quo), the likelihood of success standard is elevated: the movant must show a clear or substantial likelihood of success." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005). Because Pinnacle does not seek relief that merely preserves the relative positions of the parties, but instead seeks relief that disrupts the status quo—specifically, through a Court order permitting Pinnacle

8

to completely bypass a statutory exhaustion process through which Pinnacle must challenge an overpayment determination—Pinnacle must show a "clear or substantial likelihood of success."

## ARGUMENT

Plaintiff's request that this Court enjoin and restrain the Government from enforcing its reimbursement demand for Medicare overpayments during the pendency of this action should be denied.

### I.    Pinnacle Fails to Demonstrate a Likelihood of Success on the Merits

### A.    Because Pinnacle Has Failed to Exhaust Its Administrative Appeals, the Court Lacks Jurisdiction Over Its Claims

As a threshold issue, Pinnacle is unlikely to succeed on the merits because it has failed to exhaust its administrative appeal, instead opting to file a lawsuit before it has undergone any of the steps mandated by the MMA.  Section 1395ff(b)(1)(A) provides that "any individual dissatisfied with any initial determination" regarding entitlement to benefits under Medicare Part A "shall be entitled to reconsideration of the determination, and . . . to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."  42 U.S.C. § 1395ff(b)(1)(A).  But Section 405(h) sharply curtails the circumstances in which a claimant can seek judicial review, providing that "no finding of fact or decision" of the Secretary "shall be reviewed by any person, tribunal, or governmental agency except as herein provided." Section 405(h) also states that "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."  42 U.S.C. § 405(h).  When taken together, these provisions ensure that individuals are only entitled to judicial review of Medicare claims after they have exhausted the multistep administrative appeal process specifically laid out in the MMA.  *See Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 8 (2000) ("42 U.S.C. § 405(h) channels most, if not all,

9

Medicare claims, through this special review system.").  Pinnacle has clearly not completed this process, as it has not yet even sought redetermination, and accordingly the Court does not have jurisdiction over its claims.

Moreover, federal question jurisdiction does not exist with respect to Pinnacle's constitutional and Administrative Procedure Act claims, as Section 405(h) bars actions brought pursuant to 28 U.S.C. § 1331 to recover on claims arising under the MMA.  *See Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012) (explaining that the language of Section 405(h) "is sweeping and direct and . . . states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted"); *N.Y. Statewide Senior Action Council v. Leavitt*, 409 F. Supp. 2d 325, 330 (S.D.N.Y. 2005) ("To the extent that Plaintiffs assert jurisdiction under the Administrative Procedure Act, such jurisdiction is foreclosed by the Supreme Court's interpretation of § 405(h) . . . .").

### B.   Because Pinnacle Has Not Yet Exhausted Its Administrative Remedies, Its Due Process Claims Are Not Yet Ripe

Pinnacle is also unlikely to succeed on the merits because its due process claims are not yet ripe.  The Second Circuit has previously held that where a plaintiff has not yet exhausted its administrative remedies, such circumstances "counsel[] in favor of invoking the prudential ripeness doctrine," in order to avoid "interference with ongoing administrative activity."  *Am. Sav. Bank, FSB v. UBS Fin. Servs.*, 347 F.3d 436, 440 (2d Cir. 2003); *see also Kittay v. Giuliani*, 112 F. Supp. 2d 342, 348 (S.D.N.Y. 2000) ("Particularly, as here, where the dispute involves administrative and zoning regulations, the ripeness doctrine restrains courts from entangling themselves in abstract disagreements over policies, freeing agencies from judicial interference until an actual administrative decision has been formulated and its effects concretely realized.").

Here, Pinnacle urges the Court to find that it has been denied due process before it has even begun the process of appealing the initial determination, essentially asking the Court to completely disregard the statutory scheme Congress created to address this precise scenario. Pinnacle's position is also at odds with recent decisions where courts have found that the first two steps of the four-step administrative appeal process provided constitutionally adequate process prior to the government's recoupment of overpayments.

For example, in *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 525 (5th Cir. 2020), the plaintiff asserted that its due process rights were violated by a multiyear wait for an ALJ hearing and decision at Step 3 of the administrative appeals process, and that the government had acted *ultra vires* by recouping payments without providing a timely hearing. The Fifth Circuit denied Sahara's request for a preliminary injunction, concluding that even though "Sahara's private interest will be greatly affected by beginning recoupment," and "[t]he government interest, in comparison, is slight," Sahara "ha[d] already received two meaningful opportunities to be heard" at Steps 1 and 2, and therefore it had received adequate process. *Id.* at 530. Indeed, the Fifth Circuit noted that these two reviews "were not just an exercise in rubberstamping," and in fact they "lowered Sahara's overpay amount from $3,573,595.61 to $2,416,157.10." *Id.* The Fourth Circuit came to a similar conclusion with respect to an identical due process claim regarding a delayed ALJ hearing, noting that "while Advantage Health has elected not to avail itself of the escalation procedure in favor of pursuing delayed ALJ review, it cannot complain that its election denies it due process." *Accident, Injury, & Rehab., PC v. Azar*, 943 F.3d 195, 204 (4th Cir. 2019).

When confronted with the same issue, Judge Kuo in the Eastern District of New York concluded that "the first two layers of Medicare administrative review provide substantial protections and allow providers to develop a complete record for judicial review." *Integrity Soc.*

11

*Work Servs.*, 2021 WL 4502620, at *17.  Reviewing the administrative appeals process, the court determined that "[t]hese procedures provide Plaintiff with pre-deprivation opportunity to be heard, post-deprivation review, and the possibility of correcting any errors, which together reduce the risk of erroneous deprivation of any interest Plaintiff has in Medicare reimbursements subject to recoupment." *Id.* at *17.  The court also denied the plaintiff's substantive due process claim, finding that the process to contest an overpayment or a recoupment decision was not "arbitrary, outrageous, or even inadequate." *Id.* at *18.

Accordingly, given the findings of courts in multiple circuits that the administrative appeals process under the MMA provides adequate process, the Court is unlikely to find that Pinnacle's due process rights were violated here.

## II.    Pinnacle Cannot Show Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 672 (2d Cir. 2023).  But "courts must not simply presume irreparable harm.  Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010).  Pinnacle is unable to show that irreparable harm would actually occur if the Court did not issue an injunction.  For one, the administrative appeals process explicitly provides that during Steps 1 and 2, recoupment is paused.  Thus, the dire picture Pinnacle paints of "immediate recoupment," and commensurate immediate harm to patients, *see* Varghese Decl. ¶¶ 2, 24, would not come to pass unless Pinnacle declined to exhaust its administrative remedies.  "A movant for extraordinary relief cannot mask an ongoing failure on its part to mitigate its damages as an ongoing instance of irreparable harm." *Lanvin, Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 192-93 (S.D.N.Y. 1990).  Nor does Pinnacle address the possibility of entering into an Extended Repayment Schedule with NGS to avoid paying the entire amount as soon as it becomes

12

due. *See Hayvin Gaming, LLC v. Workinman Interactive, LLC*, No. 23 Civ. 6172, 2023 WL 3748844 (W.D.N.Y. June 1, 2023) (finding that plaintiff's "assertion of irreparable harm is undermined by its apparent refusal to take action that would have mitigated much of the harm.").

Moreover, while Pinnacle raises concerns regarding financial hardship, courts in this circuit have previously found in the context of providers seeking Medicare compensation that "financial harm—even one that poses an existential threat to Plaintiff's business—does not meet the exacting standard required for 'irreparable harm.'" *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *12; *Abbey v. Sullivan*, 978 F.2d 37, 43 (2d Cir. 1992) ("[T]he delay and expense of the administrative (or litigation) process do not excuse compliance with that process.").

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Plaintiff's request for a preliminary injunction with a temporary restraining order.

Dated:  New York, New York
        March 2, 2026

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:  /s/ Kathleen M. Lewis
     KATHLEEN M. LEWIS
     Assistant United States Attorney
     86 Chambers Street, 3rd Floor
     New York, New York 10007
     Telephone: (212) 637-2728
     E-mail: kathleen.lewis@usdoj.gov

13

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), and Section III.D of the Court's Individual Rules, the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules and Individual Rules.  As measured by the word processing system used to prepare it, this memorandum contains 4,072 words.

Dated: New York, New York
       March 2, 2026

*/s/ Kathleen M. Lewis*
KATHLEEN M. LEWIS
Assistant United States Attorney