**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BAY PARK CENTER FOR NURSING AND REHABILITATION, LLC, d/b/a PINNACLE MULTICARE NURSING AND REHABILITATION CENTER,

Plaintiff,

-against-

ROBERT F. KENNEDY, JR., et al.,

Defendants.

No. 26 Civ. 1620 (JGK) (RWL)

**THE GOVERNMENT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2728
E-mail: kathleen.lewis@usdoj.gov

KATHLEEN M. LEWIS
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS


ARGUMENT .......... 1

I. Pinnacle's Claims Arise Under the Medicare Act .......... 1

II. Pinnacle Has Not Waived the Requirement to Exhaust Its Administrative Appeal .......... 3

III. Pinnacle Fails to Allege Any Denial of Procedural or Substantive Due Process ... 7

IV. Pinnacle's Remaining Claims Should Be Dismissed .......... 8

CONCLUSION .......... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey v. Sullivan*,
978 F.2d 37 (2d Cir. 1992) ... 3, 4, 6, 7

*Bentley v. Wellpoint Companies, Inc.*,
No. 11 Civ. 8963 (CM), 2012 WL 546991 (S.D.N.Y. Feb. 17, 2012) ... 1, 2

*Bond v. United States*,
564 U.S. 211 (2011) ... 9

*Bowen v. City of New York*,
476 U.S. 467 (1986) ... 6

*City of New York v. Heckler*,
742 F.2d 729 (2d Cir. 1984) ... 3, 4

*Conn. v. Duncan*,
612 F.3d 107 (2d Cir. 2010) ... 7

*Heckler v. Ringer*,
466 U.S. 602 (1984) ... 1, 2, 8

*Integrity Soc. Work Servs., LCSW, LLC v. Azar*,
No. 20 Civ. 2770 (PK), 2021 WL 4502620 (E.D.N.Y. Oct. 1, 2021),
*aff'd sub nom. Integrity Soc. Work Servs., LCSW, LLC v. Becerra*,
No. 21-2757, 2022 WL 1930866 ... passim

*Kaiser v. Blue Cross of Cal.*,
347 F.3d 1107 (9th Cir. 2003) ... 3

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ... 7

*New York v. Sullivan*,
906 F.2d 910 (2d Cir. 1990) ... 6

*Pavano v. Shalala*,
95 F.3d 147 (2d Cir. 1996) ... 4, 5

*Potts v. Rawlings Co., LLC*,
897 F. Supp. 2d 185 (S.D.N.Y. 2012) ... 1

*Retina Grp. of New England, P.C. v. Dynasty Healthcare, LLC*,
529 F. Supp. 3d 15 (D. Conn. 2021) ... 3

*Yale-New Haven Hosp. v. Leavitt*,
470 F.3d 71 (2d Cir. 2006) .......... 8

**Statutes**

42 U.S.C. § 405(g) .......... 8

42 U.S.C. § 405(h) .......... 1, 2

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 1

**Regulations**

42 C.F.R. § 405.968 .......... 6

Defendants Robert F. Kennedy, Jr., Mehmet Oz, Thomas March Bell, and National Government Services, Inc. ("NGS") (collectively, the "Government"), by their attorney, James M. McDonald, United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of their motion to dismiss the amended complaint filed by plaintiff Bay Park Center for Nursing and Rehabilitation, LLC, d/b/a Pinnacle MultiCare Nursing and Rehabilitation Center ("Pinnacle" or "Plaintiff") (ECF No. 48) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## ARGUMENT

### I. Pinnacle's Claims Arise Under the Medicare Act

Pinnacle asserts that the Government mischaracterizes its case as a "premature appeal of individual Medicare reimbursement determinations," when in fact it "challenges the legality of the process by which Defendants generated and implemented an extraordinary $31.2 million recoupment demand." ECF No. 51 ("Opp.") at 6. But Pinnacle's claims plainly arise under the Medicare Act and must proceed through the administrative process accordingly.

"The Supreme Court has interpreted the 'arising under' language in § 405(h) broadly," concluding that "[a] claim 'arises under' the Medicare Act if: (1) 'both the standing and the substantive basis for the presentation' of the claim is the Act; or (2) the claim is 'inextricably intertwined with a claim for medical benefits.'" *Bentley v. Wellpoint Companies, Inc.*, No. 11 Civ. 8963 (CM), 2012 WL 546991, at *5 (S.D.N.Y. Feb. 17, 2012) (quoting *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) (internal citations omitted)). Thus, "[a] claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law." *Id.* Given this strict statutory framework, "[t]he Courts of Appeals advise that courts should be wary of claims that are cleverly concealed claims for benefits." *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Bentley*, 2012 WL 546991, at *5

("Courts must discount any creative pleading which may transform Medicare disputes into state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes." (internal quotation marks omitted)).

Pinnacle claims that its amended complaint falls outside this framework because it "does not ask this Court to determine claim-by-claim, whether every sampled resident required skilled nursing services on every day of service." Opp. at 6. But this interpretation of § 405(h) is unduly narrow. Because Pinnacle's suit is "inextricably intertwined" with a claim for Medicare benefits, it arises under § 405(h). *Heckler*, 466 U.S. at 614. Indeed, Pinnacle claims that it contests "the legality of the process by which Defendants generated and implemented an extraordinary $31.2 million recoupment demand," Opp. at 6, but its allegations are chiefly concerned with how the Government arrived at the recoupment amount. For example, Pinnacle challenges what it views as the retroactive application of regulatory standards and interpretations to the sampled claims, the lack of attention paid to "federal and state COVID waivers and emergency orders" that directed SNFs to "put patients over paperwork," and "statistically defective extrapolation." Opp. at 6, 15.

Pinnacle's claims also arise under the Medicare Act because the harms they allege, including "destabilized operations, impaired creditor relationships, and the threat of facility closure and resident displacement," all stem from the "catastrophic recoupment demand." Opp. at 2, 6. Where "[a]ny harm to Plaintiff flows from its deprivation of payments under the Act," that claim arises under the Medicare Act. *Integrity Soc. Work Servs., LCSW, LLC v. Azar*, No. 20 Civ. 2770 (PK), 2021 WL 4502620, at *9 (E.D.N.Y. Oct. 1, 2021), *aff'd sub nom. Integrity Soc. Work Servs., LCSW, LLC v. Becerra*, No. 21-2757, 2022 WL 1930866; *see also Bentley*, 2012 WL 546991, at *6 (finding that breach of contract claim arose under the Medicare Act because complaint "allege[d] that NGS engaged in deceptive acts or practices relating to NGS's alleged failure to

reimburse Plaintiff for Medicare money allegedly due"); *Retina Grp. of New England, P.C. v. Dynasty Healthcare, LLC*, 529 F. Supp. 3d 15, 23 (D. Conn. 2021) (finding that indemnification and apportionment claims were "inextricably intertwined" with claim for benefits under the Medicare Act because "retroactive reclassification of Retina as a participating provider and payment of its claims as such by NGS would remedy all of the harm alleged by both Retina and Dynasty and extinguish all of their claims in this lawsuit"); *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1114-15 (9th Cir. 2003) (home health agency's constitutional, statutory, and common law claims allegedly arising out of Medicare contractor's cessation of payments due to previous overpayments were "inextricably intertwined" with the agency's claims for Medicare reimbursement because "[h]ad the [owners] been immediately granted a satisfactory [repayment plan], for example, or had they never accrued an overpayment in the first place, they never would have brought the case").

## II. Pinnacle Has Not Waived the Requirement to Exhaust Its Administrative Appeal

Pinnacle further asserts that even if its claims do arise under the Medicare Act, exhaustion of its administrative appeal should be waived—but Pinnacle fails to satisfy any of the factors required for waiver. Courts use the following criteria when determining whether the exhaustion requirement should be waived: "(1) whether the claim is collateral to a demand for benefits; (2) whether exhaustion would be futile; and (3) whether the plaintiffs would suffer irreparable harm if required to exhaust their administrative remedies before obtaining relief." *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992). "The factors 'must be guided by the policies underlying the exhaustion requirement' using 'judgment that weighs the utility of exhaustion against countervailing considerations like futility and irreparable harm.'" *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *9 (quoting *Abbey*, 978 F.2d at 44). "No one factor is critical," *City of New York*

*v. Heckler*, 742 F.2d 729, 736 (2d Cir. 1984), but "[e]xhaustion is the rule, waiver the exception." *Abbey*, 978 F.2d at 44.

First, Pinnacle fails to show that its claims are collateral to its claims for benefits. "A claim is collateral where it challenges administrative processes or regulations, rather than reimbursement decisions, and where it does not seek the same relief sought in the underlying administrative hearing." *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *10. Pinnacle asserts that it challenges "whether Defendants may, consistent with due process and their statutory authority, impose an immediate $31.2 million demand based on an opaque audit that ignored COVID waivers, applied later standards retroactively, concealed reviewer qualifications, relied on a defective sample, and failed to provide meaningful notice." Opp. at 9. But the relief sought—a re-evaluation of the $31.2 million demand—is substantively the same as the relief Pinnacle seeks in the underlying administrative hearing. *See Integrity Soc. Work Servs.*, 2021 WL 4502620, at *10 ("A decision does not need to be 'wholly collateral' to the claim for benefits as long as the court is 'not asked to [and does not have to] rule on the merits of any of the underlying claims.'" (quoting *City of New York*, 742 F.2d at 737)). Because Pinnacle is "not challenging the validity of agency regulations, but challenging the application of regulations to [Pinnacle]," its claim is not collateral to its claim for benefits. *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996); *see also Integrity Soc. Work Servs.*, 2021 WL 4502620, at *11 ("Plaintiff's only factual allegation in support of its argument that the Secretary did not exercise proper oversight over Safeguard is the outcome of that process itself, *i.e.*, Safeguard's determination that Plaintiff was overpaid on its benefits claim.").

Second, Pinnacle fails to show that requiring exhaustion would cause irreparable harm. Pinnacle asserts that even if recoupment is paused during the first two levels of administrative review, the Demand Letter itself "imposes immediate legal and financial consequences" in the

form of "a massive debt, an interest burden of nearly $10,000 per day, destabilized relationships with creditors and vendors, impairment of operations, and uncertainty that threatens a healthcare facility's ability to plan, staff, and continue caring for residents." Opp. at 10. But "financial hardship claimed by providers seeking Medicare compensation does not constitute irreparable harm." *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *12; *Pavano*, 95 F.3d at 151 ("Although it is true that some of the claimants are sick or elderly persons who might have suffered harm by waiting for reimbursement, the majority of the *claims* at issue were to compensate anesthesiologists for undercompensation. Such claims do not give rise to irreparable harm.") (emphasis in original).

Moreover, although Pinnacle also asserts that its residents will suffer "deteriorating health due to deprivation of benefits or entitlements" if Pinnacle is required to exhaust the administrative process, Opp. at 10 (quoting *Integrity Soc. Work Servs.*, 2021 WL 4502620, at *12), it fails to explain why judicial review does not present similar concerns. Consideration by a district judge would neither nullify the recoupment demand, nor ameliorate the uncertainty that comes with it. And even assuming that residents' health is affected by the existence of the recoupment demand, Pinnacle has not explained why proceeding through the remaining steps of the administrative appeals process would be worse for residents than litigating in federal court.

Pinnacle also asserts that "the 'partially favorable' redetermination does not cure the irreparable harm or demonstrate that the administrative process is functioning meaningfully," because the redetermination resulted in a de minimis reduction in the recoupment amount. Opp. at 10-11. Pinnacle similarly dismisses the Government's "speculation that the Qualified Independent Contractor ('QIC') may eventually correct the errors." *Id.* at 2. These arguments further undermine Pinnacle's claim that it is challenging the process, and not the overpayment

determination; indeed, an unfavorable outcome does not mean that the process itself was inadequate. But more to the point, the process is *simply not finished*. Pinnacle has only completed the first stage, and the second reconsideration stage is, by design, a more expansive review of the entire record, performed by a reviewer who is not affiliated with NGS. *See* 42 C.F.R. § 405.968. While the Government cannot guarantee that reconsideration will result in a more favorable outcome, it is hardly speculative to say that the reconsideration stage will provide Pinnacle with an adequate opportunity to make its case before a neutral arbiter.

Third, and finally, Pinnacle fails to allege that exhaustion would be futile or inadequate. Pinnacle asserts that the administrative process "cannot timely address the systemic defects," including alleged flaws in the audit methodology, the failure to provide reviewer qualifications, and the retroactive application of post hoc PDPM standards. Opp. at 11. But as discussed above, the harms alleged all stem from the size of the recoupment amount. Reduction of this amount through the administrative process would squarely address these harms.

Courts evaluating waiver of exhaustion are advised to take "a more general approach, balancing the competing considerations to arrive at a just result." *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990). Here, important considerations weigh in favor of allowing the administrative appeal process to take its course. One of the "principal purposes" of administrative exhaustion is "preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors . . . ." *Abbey*, 978 F.2d at 44 (internal quotation marks omitted). If Pinnacle is in fact correct that errors marred the overpayment determination and calculation of the recoupment amount, as well as the redetermination decision, then it is especially important that the relevant agencies review and correct these errors. *See Bowen v. City of New York*, 476 U.S. 467, 485 (1986) ("Because of the

agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context."). "Giving the agency first crack at correcting its own errors also conserves judicial resources," a principle that "applies with even greater force when administrative resolution of [Plaintiff's] claims may, as in this case, enable to agency to resolve the case on nonconstitutional grounds, a result generally favored by the federal courts." *Abbey*, 978 F.2d at 45.

### III. Pinnacle Fails to Allege Any Denial of Procedural or Substantive Due Process

Pinnacle's due process claims are not ripe. Pinnacle asserts that it is "alleg[ing] a present deprivation" in the form of "a demand exceeding $31 million including accrued interest" and the Government's failure to provide adequate notice of its claims and methodology. Opp. at 13. But ripeness is designed to "protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Conn. v. Duncan*, 612 F.3d 107, 112 (2d Cir. 2010) (internal quotation marks omitted). Although hardship is a consideration for courts adjudicating ripeness, "[t]he mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Id.* at 115. (internal quotation marks omitted). Here, the Court does not yet have a concrete, formalized decision to review—indeed, as shown by the decision on redetermination, *see* ECF No. 50 ("Gov't Mem.") at 10, the overpayment decision and recoupment amount are subject to change as long as the administrative appeal process remains ongoing. For the same reason, Pinnacle's claims of hardship are chiefly claims regarding the possibility of future injury, as the recoupment amount is not yet final.

Pinnacle also asserts that its due process claims satisfy the test under *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976), Opp. at 13, but multiple courts have found that the first two steps of the administrative appeals process provide meaningful process under that test. *See* Gov't Mem. at

17-19 (collecting cases). This Court should follow their lead, and conclude that Pinnacle has been provided with sufficient process. In addition, the Court should dismiss Pinnacle's substantive due process claim, because the process it has been afforded is hardly inadequate, much less "arbitrary" or "outrageous." *See Integrity Soc. Work Servs.*, 2021 WL 4502620, at *18.

**IV. Pinnacle's Remaining Claims Should Be Dismissed**

Pinnacle's remaining claims are without merit, and should be dismissed.

First, Pinnacle rejects the Government's argument that OIG should be dismissed from this action on the basis that the advisory OIG Report was not binding on CMS's overpayment determination, because "OIG's findings remained the operative predicate for the demand." Opp. at 20. But even if the Court were to accept Pinnacle's claim that CMS and NGS failed to "independently evaluate[] OIG's findings before converting them into an interest-accruing payment obligation," Opp. at 20, OIG did not cause or contribute to that failure. Accordingly, Pinnacle's allegations do not support a plausible claim for relief against OIG.

Second, Pinnacle fails to plausibly allege any APA claims. There is no federal question jurisdiction with respect to APA claims arising under the Medicare Act, Gov't Mem. at 13, and even if there were, courts may only apply the APA's judicial review provisions "where no provision of § 405(g) is on point." *Id.* at 13 n.2 (quoting *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 78 (2d Cir. 2006)). Because Pinnacle's claims arise under the Medicare Act for all the reasons discussed *supra*, Section I, it is statutorily barred from bringing any APA claims.

Third, Pinnacle asserts that "[a]gencies . . . do not have discretion to apply the wrong legal framework or impose catastrophic financial consequences through an arbitrary and ultra vires process." Opp. at 21. But "the common-law writ of mandamus . . . is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler*, 466 U.S. at 616. Even setting aside the fact that the

Secretary's overpayment decision was discretionary, Gov't Mem. at 19-20, Pinnacle has not exhausted all other avenues of relief.

Finally, Pinnacle fails to establish a Tenth Amendment claim. Pinnacle asserts that New York's modifications to recordkeeping expectations constituted an exercise of its police powers under the Tenth Amendment during the COVID-19 pandemic. Opp. at 17. But the power to administer Medicare—including the power to determine the amounts of reimbursements—plainly belongs to the federal government. Accordingly, the Government did not "exceed[] the National Government's enumerated powers" when it reached its overpayment determination. *Bond v. United States*, 564 U.S. 211, 225 (2011).

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant its motion to dismiss the amended complaint.

Dated: New York, New York
October 9, 2026

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

By: *_/s/ Kathleen M. Lewis_*
KATHLEEN M. LEWIS
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2728
E-mail: kathleen.lewis@usdoj.gov

*Attorney for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 2,727 words.